**PUERTO RICO WATER RESOURCES AUTHORITY**

v.

**The UNITED STATES.**

No. 50266.

United States Court of Claims.

Nov. 8, 1955.

Abraham J. Harris, Washington, D. C., for the plaintiff.   Robert E. Sher, Washington, D. C., Gabriel Guerra-Mondragon, Santurce, P. R., and Sher, Oppenheimer & Harris, Washington, D. C., were on the briefs.

Alfred J. Kovell, Paxinos, Pa., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

LITTLETON, Judge.

The plaintiff sues for payment for electricity furnished to the Government which was not recorded by the meter because of a "phase unbalance" caused by a blown fuse.   The questions presented are whether the contract prohibits recovery, and if not, the time that the fuse blew and the amount which plaintiff is entitled to recover.

On April 1, 1943, plaintiff entered into a contract with the Army to supply electricity to Fort Buchanan, an Army post located at Guaynabo, Puerto Rico, and to various other points within a 25-mile radius.   The plaintiff supplied electricity to defendant under the terms of the contract at all times material to this action.   The plaintiff submitted and defendant paid monthly bills for the electricity supplied as shown by the meter readings.   A clause in the contract provided:

"* * * The contractor shall furnish, install, maintain, calibrate and read meters to measure the electrical energy to be furnished hereunder.   Meters will be read monthly in the presence of the Contracting Officer or his authorized representative. * * *

"In case of error in meter readings, it is mutually agreed that the percentage of error shall apply only to the electricity used since the date of the meter reading applying to the last bill."

The contract required plaintiff to install metering devices to measure the demand in kilovolt-amperes (KVA) at specified intervals and the consumption in kilowatt-hours (KWH) continuously. The plaintiff was to be paid for the current consumed on the basis of a formula using both demand and consumption, for each of which rates were specified. The defendant agreed to furnish and maintain the transformer substations and local distribution system and to connect its load so as to give a balanced load on all phases. If a phase unbalance exceeding ten percent should be found to exist, the plaintiff could require the defendant to rearrange the connection of its load to correct the unbalanced conditions.

The plaintiff's transmission lines carried 38,000 volts to two substations, one known as the Army Terminal substation, at which connections were made for emergency use only, without metering devices, and another substation at the South Gate of Fort Buchanan, where the meter was installed. Thereafter, when current was supplied through the Army Terminal substation, the amount used was estimated and paid for on the basis of prior use for an agreed period as recorded at the South Gate substation.

During March, April, and May 1946, while the transmission lines within the Fort Buchanan area were being relocated, the current was supplied through

the Army Terminal substation and defendant paid for the electricity based on an average of the preceding six months.

The transformers at the South Gate substation received current of the strength of 38,000 volts, carried by three transmission lines. The voltage was reduced by the transformers to the 4,000 class. On the primary, or high voltage side, each transmission line was attached to a fuse, through which the current passed into the transformer. Each fuse was between the meter and the transformer. The fuses were in the portion of the installation maintained by the Army and the plaintiff had no responsibility for their inspection, maintenance, or replacement. The meter corresponded to the requirements in the contract and was in proper working order at all times.

During the 20-month period beginning with July 1944 and ending with February 1946, the average KVA demand was 1808.73 while the average KWH consumption was 592,911. The average of the monthly bills was $6,848.91. The military strength at the fort declined between February and August 1946, but remained fairly constant thereafter. During this period of decline there were contingents of military personnel at the post from time to time using it as a way station in the shifting of manpower.

On July 6, 1948, while Government employees were trimming trees adjacent to the power lines, a branch of a tree fell across the lines and caused interruption of the electric service. Investigation disclosed that two of the three fuses were burned out. When the fuses were replaced, full service was restored and the meters accurately recorded the current furnished. The parties agree that one fuse blew at this time and that the other was blown at some earlier date. When one fuse was blown service was not disrupted but a phase unbalance exceeding ten percent was caused, and the meter was caused to record an inaccurately low consumption. When two fuses were blown service was disrupted.

An explanation was demanded by defendant when the July bill, which was $9,704.57 (after the two fuses were replaced), was compared with the June bill of $5,340.38. It was noticed that both KWH consumption and amounts paid by defendant had been substantially reduced from earlier patterns since August 1946, and that there had been a rather sharp reduction of KVA demand in July 1946. Neither demand nor consumption had been as high, since midsummer 1946, as they were before that time or as they were shown to be in July 1948. When the figures were plotted on a graph, valleys in both demand and consumption were reflected, extending over a 2-year period, approximately, in what otherwise appeared as a slowly ascending line for KWH and a slowly descending line for KVA. The bakery was closed in March 1948, for conversion to oil, which reduced the KVA load. It was reopened the following June and the KVA load was slightly increased. From July 1948, to the early part of 1949, some electrical equipment was added and the KVA was increased by about 800.

The plaintiff contended that the first fuse was blown in July 1946; that the failure of this fuse affected the meter in such a way that it failed to record all of either consumption or demand; that defendant had been underbilled for current during the 24-month period from July 1946 to July 1948; that the application of an experience pattern drawn from five months immediately before and after the period in controversy affords a reasonable basis of estimating such current; and that on such basis, defendant had and used power for which it has not paid of the value of $80,449.78.

The defendant contends that the above-quoted clause in the contract relative to meter readings precludes recovery and in the alternative, that plaintiff's claim is speculative and, in any event, it is just as reasonable to say that the first fuse was blown in December 1947 as it is to say that it was blown at an earlier date. The Armed Services Board of Contract Appeals found that

plaintiff had established a claim for electric energy furnished the defendant, but was of the opinion that the meter reading clause prohibited recovery, except for the period following the last bill before the restoration of service on July 6, 1948.

■■ We think defendant's contention that this was a "meter reading" error is without merit. The evidence in the record fails to establish a trade usage meaning for this term. There was no error on the part of personnel in reading or recording figures from the meter. The blown fuse, for which the Government was responsible, caused the phase unbalance which caused the meter to record inaccurately. The Government drew the contract. If defendant intended to limit or define its liability resulting from mechanical failures caused by itself or for which it was responsible, less ambiguous language should have been employed. The plaintiff agreed to furnish and the Government agreed to pay for the electricity demanded and consumed, at specified rates. The plaintiff has fulfilled its part of the contract and now seeks to be paid for it. To. give the meter reading clause the construction contended for by defendant would be unjust and contrary to the obvious intent of the parties. United States v. Southern Gulf Lumber Co., D.C.S.D.Ala., 106 F.Supp. 815. In that case, where the clause was identical to the one in the instant case, the Government employee had actually misread the meter by adding a zero to the correct figures. The court allowed the Government to recover the overpayment.

■ The two remaining questions are when did the fuse blow, and how much electricity did defendant use? The commissioner has found from the evidence of record that the fuse blew about September 1, 1946. Although plaintiff contends it blew in July of that year, it acquiesces, however, in the commissioner's finding. The defendant contends that a determination of when the fuse blew would be speculative, and at any rate the fuse did not blow earlier than December 1947. The commissioner has found that there is nothing in the evidence other than the blown fuse to explain the precipitate drop in energy consumption in September 1946, as compared with consumption of previous months. We agree with this finding. There was also a large unexplained drop in the recorded (KVA) demand at about that time. The actual amount of electricity used by defendant at Fort Buchanan was fairly constant from August 1946 to July 1948. We agree with and adopt the commissioner's finding that the evidence reasonably indicates that the fuse blew in September 1946.

■ The plaintiff contends that it is entitled to recover $72,456.50 for the amount of current furnished defendant for the period from September 1, 1946 to July 6, 1948. The plaintiff bases this amount on an estimate predicated on a 5-month average before and a 5-month average after the period in controversy, computed at the rates then in effect. The commissioner of the court has found that the amount of recovery should be $66,500. After considering the slight variations which tended to increase the use in the 5-month period after June 1948, and the 20-month period preceding the period in controversy, we concur in the commissioner's finding that $66,500 should be the amount of recovery.

The plaintiff is entitled to recover and judgment will be entered in the sum of $66,500.

It is so ordered.

JONES, Chief Judge, and LARAMORE, MADDEN and WHITAKER, Judges, concur.